AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT ☒ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud; 18 U.S.C. §§ 981(a)(1)(C) & 28 U.S.C. § 2461(c) – Criminal Forfeiture

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:
Maximum penalties:
20 years of imprisonment
3 years of supervised release
$250,000 fine
$100 special assessment

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

FILED
APR 02 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

**DEFENDANT - U.S**
▶ ANTHONY GIOVANNI MONTANELLI

DISTRICT COURT NUMBER
CR 19 156 JST

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court
_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District
_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
SHOW DOCKET NO. _____

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.
18-MJ-70898

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form
DAVID L. ANDERSON
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)
KATIE BURROUGHS MEDEARIS

**DEFENDANT**

**IS NOT IN CUSTODY**
1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____
2) ☐ Is a Fugitive
3) ☒ Is on Bail or Release from (show District)
Northern District of California

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution
_____

Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS ☒ NO PROCESS* ☐ WARRANT
If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:
_____

Comments:

Bail Amount: _____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____ Before Judge: _____

DAVID L. ANDERSON (CABN 149604)
United States Attorney

FILED
APR 02 2019 
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) NO. **CR 19 156 JST** |
|---|---|
| Plaintiff, | ) VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) – Forfeiture |
| v. | ) |
| ANTHONY GIOVANNI MONTANELLI, | ) OAKLAND VENUE |
| Defendant. | ) |

### INFORMATION

The United States Attorney charges:

#### Introductory Allegations

At all times relevant to this Information:

1. Defendant Anthony Giovanni MONTANELLI ("MONTANELLI") resided in the Northern District of California.

2. Kaiser Foundation Hospitals and Health Plan, Inc. ("Kaiser") was one of the nation's largest not-for-profit health plans. Kaiser served millions of members in multiple states, including California. Kaiser was headquartered in Oakland, California.

3. MONTANELLI was employed with Kaiser from approximately September 24, 2012 to May 18, 2016. He worked as a biomedical engineer within the Clinical Technology Department ("Clin-

INFORMATION

1

Tech"). MONTANELLI was a full-time employee assigned to service territories that included the San Francisco and Peninsula areas. As a biomedical engineer, MONTANELLI was responsible for repairing, servicing, and reporting work performed on ultrasound systems and parts.

4. Kaiser tracked and retained information about its ultrasound systems and related parts via a computer program known as Biomedical Engineering Management System ("BEMS"). BEMS served as an inventory tracking tool and records repository for Kaiser. As examples, Kaiser used BEMS to identify the location of its medical parts and systems, order new inventory, track incoming parts and return shipments to and from vendors, process service reports, monitor maintenance activities, and decommission equipment. Biomedical engineers were expected to accurately record their work in BEMS. Kaiser relied, in part, on its biomedical engineers to accurately provide and capture information in BEMS regarding its medical device parts and systems. Kaiser also used BEMS as a source of information for data analytics.

5. Biomedical engineers were authorized to make requests for ultrasound parts and systems in order to repair, replace, and/or maintain the medical equipment. Biomedical engineers often worked with other members of Clin-Tech whose job entailed coordinating with Kaiser's vendors to process the requests and purchase orders. These individuals held the position of "contracting/procurement services specialists" (hereafter, "procurement specialists"). The Clin-Tech procurement specialists were based in Berkeley, California. They relied on information provided by biomedical engineers in the field to determine which parts were needed, how many parts to order, the urgency of the repair, and/or the desired shipment destination. Authorized Clin-Tech employees could create, modify, close, and/or otherwise process orders and other data in BEMS. Biomedical engineers were expected to accurately report the need, purpose, and use of ordered parts and systems in BEMS.

6. Kaiser obtained ultrasound systems and parts from a variety of vendors, including, but not limited to, Philips, Siemens, and General Electric ("G.E."). These vendors frequently shipped medical equipment to Kaiser from outside the State of California via various commercial carriers, including United Parcel Service ("UPS") and FedEx Express ("FedEx"). The vendors shipped the requested ultrasound parts and systems to locations identified by Kaiser during the order process, including to locations such as Kaiser medical centers, UPS or FedEx parcel service centers for customer

INFORMATION

2

1  pick-up, or other provided addresses within the Northern District of California.

2      7.     Kaiser contracted with many of its vendors for medical parts and systems. These contracts often included discounted equipment and parts pricing based on the volume of orders and/or in connection with agreements requiring Kaiser to return used or broken parts for refurbishing or warranty replacements. In instances where Kaiser was required to return a part to the vendor, the part was referred to as a "core return." Biomedical engineers were responsible for ensuring "core returns" were sent back to the vendor to avoid Kaiser incurring additional costs for the failure to provide the parts. These additional costs were known as "re-bills." Kaiser also held contracts with its vendors authorizing set prices of a certain number of parts or systems with escalating or re-negotiated pricing for any parts overages. Kaiser relied on information generated from BEMS for a number of purposes, including, but not limited to, aiding in negotiating its vendor contracts, monitoring core returns, and tracking its parts purchases and inventory.

8.     In addition to inputting accurate information in BEMS, Kaiser also required its biomedical engineers to track their service hours and complete timecards to reflect the amount of time spent repairing, replacing, and maintaining equipment and/or traveling to Kaiser's facilities. Kaiser used this information for a number of purposes, including to assist with payroll. Biomedical engineers were paid for their travel connected to work on behalf of Kaiser.

## Establishment and Operation of Pacific Coast Imaging

9.     MONTANELLI and another individual (hereafter, "Person A") opened and operated a business together named Pacific Coast Imaging ("PCI"), which leased, serviced, and sold medical device equipment. Person A was also employed as a full-time Kaiser biomedical engineer within Clin-Tech between approximately 2009 and 2015. MONTANELLI and/or Person A registered PCI with various government entities, including:

   a.   On February 1, 2010, MONTANELLI filed a Fictitious Business Name for PCI with the Santa Clara Office of the Clerk-Recorder and listed himself as the "owner."

   b.   On July 10, 2010, MONTANELLI acquired a business license for PCI from the City of San Jose, California for the purpose of running an "imaging services" business located at 780 Montague Expressway in San Jose, California.

INFORMATION
3

        c.      On August 29, 2014, Person A signed and filed documents to register PCI with the State of California, Office of the Secretary of State. The Articles of Incorporation associated with the registration listed Person A as one of two initial corporate directors of the company. The Articles of Incorporation also provided Person A's home address in San Ramon, California as PCI's corporate address.

        d.      On September 29, 2014, a Statement of Information for PCI was filed with the California Secretary of State and signed by Person A. The Statement of Information provided new information, including: listing MONTANELLI as an additional director of PCI; identifying Person A as the Chief Executive Officer and President of PCI; and describing the nature of the corporate business as the "lease and service of medical equipment."

10. Based on corporate tax returns, PCI reported gross profits exceeding $1 million and $400,000 in 2015 and 2016, respectively. PCI sold, leased, and maintained ultrasound equipment for clients in the State of California and elsewhere. Person A and MONTANELLI ran the business together.

The Conspiracy and Scheme to Defraud

11. Beginning on a date unknown, but no later than February 2010, and continuing through in or about April 2018, in the Northern District of California, and elsewhere, MONTANELLI and Person A knowingly devised, intended to devise, and carried out a scheme and artifice to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission and concealment of material facts. They diverted new, used, and decommissioned ultrasound systems and parts owned and paid for by Kaiser for the purposes of leasing, selling, and stockpiling the equipment for their PCI customers. They then fraudulently leased, sold, and stockpiled this equipment.

12. In furtherance of their scheme, MONTANELLI and/or Person A made numerous false statements and concealed their scheme from Kaiser by engaging in the acts listed below:

        a.      created or modified service and repair records in BEMS to reflect repair work, which was not completed and/or did not require the parts requested;

        b.      entered or directed other unwitting Kaiser employees, including procurement specialists, to enter false or misleading information into BEMS to justify the ordering of new or

INFORMATION

4

replacement ultrasound parts and systems from vendors when, in fact, such items were not needed;

  c. closed purchase orders in BEMS to indicate the ordered parts were received and used to repair or replace Kaiser equipment when, in fact, the parts or systems were diverted to PCI;

  d. recorded parts and/or systems in BEMS as decommissioned when, in fact, electronic protected health information (ePHI) had not been removed as required and, instead, the equipment was diverted to PCI;

  e. recorded on-hand/available parts inventory in BEMS as low or non-existent when, in fact, MONTANELLI and/or Person A possessed a large stockpile of new and used Kaiser-owned ultrasound parts and systems;

  f. recorded parts and/or systems as being replaced in BEMS when, in fact, the parts or systems remained in service and the ordered replacements had been diverted to PCI;

  g. reported compliance with Kaiser's requirements for safeguarding and proper use of Kaiser assets during Kaiser's Annual Compliance training when, in fact, MONTANELLI and/or Person A violated company policies, including by using Kaiser's assets for personal gain or benefit, disposing of Kaiser assets outside authorized practices, failing to report fraudulent activities, failing to keep track of assets, failing to maintain accurate business records, and not protecting ePHI;

  h. entered not-tendered or false tracking numbers into BEMS to indicate "core returns" had been shipped to Kaiser's vendors when, in fact, the parts were diverted to PCI;

  i. used work and travel time paid by Kaiser to operate PCI, including by staffing their PCI office in San Jose, California and traveling to service PCI clients in locations such as Reno, Nevada and Yuba City, California;

  j. submitted service hours or "clock-in/clock-out" times indicating work was performed on behalf of Kaiser when, in fact, Person A and/or MONTANELLI spent portions of their time performing work for PCI and Kaiser should not have paid them for these hours;

  k. submitted service hours or "clock-in/clock-out" times indicating work had been performed for Kaiser when, in fact, MONTANELLI and/or Person A were traveling to service PCI clients in locations such as Reno, Nevada, and Yuba City, California and Kaiser should not have paid them for these hours;

INFORMATION

5

l.  rented multiple storage units at Lock It Up Self-Storage facility in Pleasanton, California to hoard at least 1,793 new and used ultrasound parts, including ultrasound probes, as well as approximately 117 ultrasound systems diverted from Kaiser;

m.  shared pdf files detailing Kaiser's equipment inventory via an email sent from MONTANELLI's Kaiser email account to Person A's personal email account;

n.  sold eleven or more Kaiser-owned ultrasound systems to a medical academy for roughly $11,000 to $12,000 each and entered into service contracts through PCI to maintain the sold systems; and

o.  caused Clin-Tech to purchase new ultrasound parts and/or systems from Kaiser's vendors, which shipped the ordered medical equipment via commercial carriers, such as UPS and FedEx, from outside the State of California and delivered the items to various locations, including: the home addresses of MONTANELLI and/or Person A in San Ramon, California, where the ordered items were diverted to PCI.

COUNT ONE:   (18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud)

13.  The allegations contained in paragraphs 1 through 12 of this Information are hereby re-alleged and incorporated herein by reference.

14.  Beginning on a date unknown, but no later than February 2010, and continuing through in or about April 2018, within the Northern District of California, and elsewhere, MONTANELLI, together with others known and unknown, for the purpose of executing the above-described scheme to defraud, knowingly conspired and agreed to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1349.

FORFEITURE ALLEGATION:   (18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) – Forfeiture)

15.  All of the allegations contained in this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

INFORMATION

16. Upon a conviction for the offenses alleged in this Information, the defendant, ANTHONY GIOVANNI MONTANELLI, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, constituting or derived from proceeds the defendant obtained directly or indirectly, as the result of said violations including, but not limited to a forfeiture money judgment.

17. If any of the aforementioned property, as a result of any act or omission of defendant –
   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property that cannot be divided without difficulty;

any and all interest the defendant has in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

All in violation of Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: April 1, 2019

DAVID L. ANDERSON
United States Attorney

_____
GARTH HIRE
Chief, Oakland Branch

(Approved as to form: _____)
KATIE BURROUGHS MEDEARIS
Assistant United States Attorney

INFORMATION
7